Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 4971 | DATE | 3/21/2002 |
| CASE TITLE | ANTOINETTE SMITH vs. RUSH PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [19-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 2 2 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3/21/2002 date mailed notice | |
| CB | courtroom deputy's initials | Date/time received in central Clerk's Office | CB mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTOINETTE SMITH )
)
                Plaintiff, ) No. 01 C 4971
)
v. ) Suzanne B. Conlon, Judge
)
RUSH-PRESBYTERIAN-ST. LUKE'S )
MEDICAL CENTER )
)
                Defendant. )

## MEMORANDUM OPINION AND ORDER

Antoinette Smith, *pro se*, sues Rush Presbyterian-St. Luke's Medical Center ("Rush") for race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Counts I & III); 42 U.S.C. § 1981 (Count II); and breach of an oral employment agreement (Count IV). On September 6, 2001, the court dismissed Counts II and IV, as well as Counts I and III as they pertain to retaliation claims outside the scope of Smith's Equal Employment Opportunity charge. Rush moves for summary judgment on the remaining claims in Counts I and III.

## BACKGROUND

### I. Local Rule 56.1 Responses

Although *pro se* plaintiffs are entitled to more lenient standards in some circumstances, the standards do not diminish when it comes to complying with procedural rules. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Rush provided Smith with a Local Rule 56.1 notice to *pro se* litigants opposing summary judgment. Nevertheless, Smith failed to respond to Rush's Rule 56.1 statement

1



of facts. Accordingly, all Rule 56.1 facts supported by the record are deemed admitted. *Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); L.R. 56.1(b)(3)(B); *see also Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 689 (7th Cir. 2000).

**II.  The Facts**

Smith, an African-American woman, was a Rush temporary employee performing clerical work in October 1991. In August 1992, Smith was assigned to the Department of Pediatrics as a medical transcriptionist. She was required to transcribe dictation for physicians under the supervision of Dr. Robert Kimura. Dr. Kimura considered Smith to be an excellent transcriptionist. However, Smith's performance review in 1993 and 1994 identified two areas of concern: staff conflicts and poor communication skills. Dr. Kimura was aware of personality conflicts between Smith and other staff members. As a result, Dr. Kimura separated Smith from other staff members by assigning her a workspace in 691 Pavilion, a physician on-call room, where she kept her personal effects and worked alone during the day. At night, Smith was permitted to work in 622 Murdock at Bertha Perez's desk, Dr. Kimura's secretary.

On February 20, 1998, Smith and Dorothy Malecki, a white clerical Pediatrics employee, engaged in a verbal brawl. Smith was working at Perez's desk. Malecki entered the office and turned the thermostat to a lower setting. Smith turned it back up. Smith called Malecki a "racist bitch." Def. 56.1 Facts at ¶ 22. In addition, Smith rose from her chair, clenched her fists, and said to Malecki, "let's get it on, let's get it on." *Id.* at ¶ 23. Malecki left the office and went directly to Rush's security department to report the incident. Anthony Murray, a security officer, recorded Malecki's account of the incident. The report quotes Smith as stating: "what's the matter bitch, haven't you been laid by your husband. Come on white bitch, let's get it on." *Id.* at ¶ 26. James

2

Morgridge, the Pediatrics administrator, investigated Malecki's complaint. Morgridge reviewed the security report, interviewed Malecki, and reviewed Malecki's written account of the incident. In addition, Morgridge interviewed other hospital employees who stated they had interpersonal conflicts with Smith. Morgridge and Dr. Kimura unsuccessfully attempted to contact Smith about the incident. Morgridge consulted with Linda Meeks, Rush's human resource consultant. Meeks recommended Smith's termination. On February 26, 1998, Morgridge prepared a memorandum to Dr. Kimura summarizing his investigation, identifying Smith's violations of Rush's employment policy, and recommending Smith's termination. Rule 1.03b of Rush's employment policy prohibits the use of "profane, obscene, abusive, discourteous or threatening language towards patients, fellow employees, supervisors or others. This includes derogatory ethnic name calling or offensive references to ethnic background." Def. 56.1 Facts at ¶ 40. Rule 1.03j prohibits the making of "false vicious or malicious statements" about any employee. *Id.*, Pl. Ex. 8. Meeks terminated Smith's employment on February 27, 1998.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light

3

most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). Although Smith failed to respond to Rush's Rule 56.1 statement of facts, summary judgment will be granted only if Rush demonstrates there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

## II. Title VII Race Discrimination Claim (Count I)

Title VII provides that "[i]t shall be unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.] " 42 U.S.C. § 2000e-2(a)(1); *Campbell v. Dominick's Finer Foods, Inc.*, 85 F.Supp.2d 866, 870 (N.D. Ill. 2000). Smith may prove intentional race discrimination through direct or indirect evidence. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081,1088 (7th Cir. 2000); *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000). Smith fails to offer direct evidence of race discrimination. The court examines her claim under the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 889 (7th Cir. 1997). First, Smith must establish a *prima facie* case of race discrimination. *McDonnell Douglas*, 411 U.S. at 802. If successful, the burden of production shifts to Rush to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* If Rush provides a legitimate reason, the burden shifts back to Smith to prove by a preponderance of the evidence that Rush's proffered reason was a pretext for discrimination. *Id.* at 804.

4

At the outset, the court notes Smith fails to advance any evidence to defeat summary judgment. Smith's response to the summary judgment motion is a replica of the allegations in her complaint. Further, Smith attaches to her response several performance reviews, EEOC charges, and state administrative decisions without referring to those documents in her response. It is not the court's function "to scour the record in search of evidence to defeat a motion for summary judgment." *Bombart v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Nevertheless, the court's review of those documents does not reveal a genuine dispute of material fact to defeat summary judgment.

The court proceeds directly to the pretext prong of the *McDonnell Douglas* test because Rush proffers a legitimate non-discriminatory reason for its actions. *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1392, 1404 (7th Cir. 1996). When an employer articulates a reason for discharging the plaintiff, the court does not evaluate whether that reason was wise, fair or correct. *Giannopoulous v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997). Rush's employment policy prohibited the use of profanity and abusive language against other employees. Smith violated that policy by making several abusive statements to Malecki, including calling her a "racist bitch." Def. 56.1 Facts at ¶ 22. Smith made those statements in a threatening manner by clenching her fists and stating, "let's get it on." *Id.* at ¶ 23. As a result, Malecki reported the incident to security personnel immediately. Morgridge and Meeks determined Smith's behavior violated Rush's employment policy, and terminated her employment.

Smith fails to demonstrate pretext. "A pretext, in employment law, is a phony reason that the employer offers for engaging in discriminatory conduct." *Mills v. First Fed'l Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir. 1996) (internal quotations omitted). Smith fails to advance

any evidence to demonstrate Rush's proffered reason for her termination is false. *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994). Smith's good performance reviews fail to establish Rush did not honestly believe Smith's verbal assault on Malecki required termination. *See Anderson v. Stauffer Chemical*, 965 F.2d 397, 403 (7th Cir. 1992) ("The fact that an employee does some things well does not mean that any reason for [her] firing is a pretext for discrimination"). Accordingly, summary judgment is granted on Count I.

### III. Title VII Hostile Work Environment Claim (Count III)

Title VII prohibits an employer from engaging in racial harassment that creates a hostile or offensive work environment. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180 (1989). To establish a Title VII harassment claim, Smith must demonstrate her workplace was objectively and subjectively hostile. *Hardin v. S.C. Johnson & Co., Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Whether a work environment is hostile depends on the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating; and whether it unreasonably interferes with an employee's work performance. *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001). Smith claims she was subjected to racial slurs by other employees but she does not identify the individuals who purportedly made the comments or the nature of the comments. Smith's response brief consists of conclusory statements about purported racial harassment at Rush. Smith advances no evidence to support her allegations.

Rush identifies three incidents that Smith described at her deposition to demonstrate hostile work environment. Even if the court considers those incidents, Smith fails to establish a hostile work environment claim. Smith claims Malecki stated on several occasions that Malecki did not grow up in an area where black people reside and did not know much about black people. Def. 56.1

Facts at ¶ 59. Smith advances the thermostat incident with Malecki. Finally, Smith states Malecki asked her to listen to a telephone message from an African-American caller. *Id.* at ¶ 60. Those incidents are not sufficiently severe or pervasive to create an abusive environment. *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000). "The workplace that is actionable is the one that is hellish." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997) (internal quotations omitted). Isolated comments cannot demonstrate a pervasive hostile work environment. *Nguenjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998); *see also Jones v. Illinois Dept. of Transp.*, No. 99 C 0266, 2001 WL 1545882, at *2 (N.D. Ill. Nov. 27, 2001) (isolated comments about "black comedy and apes" do not create a hostile work environment). Smith fails to demonstrate Malecki's adjustment of the thermostat setting was motivated by race. *See Hardin*, 167 F.3d at 345 (complained of conduct must have a racial purpose to be a violation of Title VII). Finally, Smith does not offer any evidence that Rush was negligent in discovering or remedying the purported harassment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). Because Smith fails to create a genuine issue for trial on her hostile work environment claim, summary judgment is granted on Count III.

## CONCLUSION

The motion for summary judgment is granted.

March 21, 2002

ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge